UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA PEREZ on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br>　　　v.<br><br>MIDLAND FUNDING, LLC,<br><br>　　　　　　　　　Defendant. | Case No.: 10-CV-01916-LHK<br><br>ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT |

Presently before the Court are Defendant Midland Funding, LLC's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") and Motion to Strike portions of the FAC. Having considered the parties' submissions and oral argument, the Court concludes that Plaintiff's claims must be dismissed because they are predicated on violations of a state law that is subject to federal preemption. Accordingly, the Court GRANTS Defendant's Motion to Dismiss the FAC with prejudice and DENIES the Motion to Strike as moot.

**I. Background**

This case is a class action brought by Maria Perez, on behalf of herself and all other persons similarly situated, to protect the rights of California consumers who have had their vehicles repossessed. The Rees-Levering Automobile Sales Finance Act ("ASFA" or "Rees-Levering Act"), Cal. Civ. Code § 2981 et seq., regulates "conditional sale contracts" for the purchase of motor vehicles in California. The ASFA covers what are typically known as installment contracts

1

in which the buyer takes possession of the vehicle but "title vests in the buyer thereafter only upon the payment of all or a part of the price" or a lien on the property vests in the seller as security for payment of all or part of the price. Cal. Civ. Code § 2981(a)(1). Under the ASFA, if a vehicle is repossessed or surrendered after default by the buyer, at least 15 days notice of intent to dispose of the vehicle must be provided before the vehicle may be sold. *Id.* § 2983.2(a). If the seller complies with the notice requirements of § 2983.2, the buyer may be held liable for any deficiency after the vehicle is sold. *Id.* However, if the seller does not provide all of the information and disclosures required by § 2983.2, the seller is precluded from recovering any deficiency from the buyer. *Id.*

In the instant action, Plaintiff Perez alleges that she purchased a vehicle from a dealership under a retail installment sale contract covered by the Rees-Levering Act. FAC ¶ 6. Financing was arranged by the dealership and provided by Wells Fargo. FAC ¶ 6. Presumably Perez defaulted on her payments at some point, and in June 2006, Wells Fargo or its agents repossessed the vehicle. FAC ¶ 7. Wells Fargo then sent Plaintiff a notice of intent ("NOI") to dispose of the vehicle, which Plaintiff alleges failed to comply with the notice requirements of the ASFA. FAC ¶ 7. Wells Fargo subsequently sold the vehicle, sent Plaintiff a demand for a deficiency in the amount of $11,032.08, and later assigned its rights under the account to Defendant Midland Funding. FAC ¶ 8. In August 2008, Midland Funding filed suit against Plaintiff in Santa Clara County Superior Court, alleging that Plaintiff owed money on an open book account. FAC ¶ 9. According to Plaintiff, the state court complaint failed to disclose that the claim was based on an alleged deficiency balance and included a declaration stating that the debt was not subject to the ASFA. *Id*. Plaintiff opposed the action on grounds that the NOI provided by Wells Fargo was defective under ASFA, and therefore Midland Funding was not entitled to recover any deficiency. *Id.* After pursuing the case until approximately one month before the scheduled trial date, Midland Funding voluntarily dismissed the action in November 2009. FAC ¶ 12-13.

Plaintiff alleges that, although the state deficiency action was ultimately dismissed, she incurred monetary expenses in connection with her defense and also suffered damage to her credit rating as the result of Defendant's wrongful reporting that she owed a deficiency balance. FAC

2

¶14. Plaintiff alleges, further, that Wells Fargo has used the same defective NOI for at least four years prior to the filing of this action and that Defendant Midland Funding routinely accepts assignments of claims for deficiencies from Wells Fargo. Accordingly, Plaintiff seeks to represent a class of consumers who have been injured by Defendant's practice of pursuing deficiency claims despite the defective notice provided by Wells Fargo. FAC ¶¶ 18-21.

Plaintiff alleges that Defendant's practices of pursuing deficiencies that are barred by the ASFA violate the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200. Plaintiff also seeks a declaration of the rights and obligations of the parties. Defendant moves to dismiss Plaintiff's FDCPA and UCL claims under Rule 12(b)(6) on grounds that Plaintiff's claims are preempted by federal law, and to dismiss the claim for declaratory relief as duplicative of the FDCPA and UCL claims. Defendant argues further that the FAC does not satisfy the heightened pleading standard under Rule 9(b) and that Plaintiff lacks standing to sue under the UCL. Defendant also moves to strike portions of the FAC under Rule 12(f). Because the Court agrees that federal preemption bars each of Plaintiff's claims, the Court does not reach Defendant's additional arguments for dismissal and will deny as moot the motion to strike.

**II. Legal Standard**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on a either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**III. Consideration of Materials Beyond the Pleadings**

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are, however, two exceptions to the general rule forbidding consideration of extrinsic evidence on a 12(b)(6) motion. *Lee*, 250 F.3d at 688. First, a court may take judicial notice of matters of public record outside the pleadings. *Id.* at 689. Second, a court may consider "material which is properly submitted as part of the complaint." *Id.* at 688 (internal quotation marks omitted). Such consideration may extend to documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

In this case, Plaintiff has attached copies of the Retail Installment Sales Contract and Wells Fargo's Notice of Our Plan to Sell Property as Exhibits A and B to the FAC. Because these documents are referenced in the FAC and no party has questioned their authenticity, the Court may consider them in ruling on the motion to dismiss. Additionally, Defendant submitted a Request for Judicial Notice of certified copies of nine filings in the state court case entitled *Midland Funding, LLC v. Maria Perez*. Req. for Judicial Notice in Supp. of Mot. to Dismiss Claims Asserted in Pl.'s FAC, ECF No. 13, Attach. 2. Although the parties agreed at oral argument that these documents are properly subject to judicial notice, the Court finds no need to rely on these documents in ruling on Defendant's motions.

## IV. Discussion

### A. Preemption of FDCPA and UCL Claims

Plaintiff's first and second causes of action under the FDCPA and the UCL are predicated on the claim that Wells Fargo failed to comply with the notice requirements of the Rees-Levering Act, thereby barring Defendant Midland Funding from collecting any deficiency resulting from the sale of repossessed vehicles. In its motion to dismiss, Defendant argues that regulations issued by the Office of the Comptroller of Currency (OCC) preempt the notice requirements of the Rees-Levering Act as applied to Wells Fargo. Defendant argues further that if federal preemption renders the notice requirements of the Rees-Levering Act inapplicable to Wells Fargo, Plaintiff cannot assert alleged non-compliance by Wells Fargo as a bar to recovery of a deficiency by Midland Funding. Defendant therefore claims that federal preemption is a complete defense to Plaintiff's FDCPA and UCL claims. For the reasons discussed below, the Court agrees with Defendant's arguments and will GRANT the motion to dismiss Plaintiff's FDCPA and UCL claims.[1]

#### 1. Preemption under the National Bank Act

Pursuant to the National Bank Act ("NBA"), 12 U.S.C. § 93a, the Office of the Comptroller of the Currency ("OCC") has the authority to regulate national banks. Although the NBA does not expressly preempt state regulation of national banks, the OCC has issued regulations expressly preempting state laws that interfere with a bank's ability to make non-real estate loans.[2] 12 C.F.R. § 7.4008(d). The regulation states:

> (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

---

[1] In its motion, Defendant relies heavily on the reasoning and holding in *Aguayo v. U.S. Bank*, 658 F. Supp. 2d 1226 (S.D. Cal. 2009), which held, on very similar facts, that the notice requirements of the Rees-Levering Act are preempted by federal law. *Aguayo* is currently being considered on appeal by the Ninth Circuit. At the motion hearing, the Court asked the parties whether it should stay the case or defer ruling on Defendant's preemption arguments pending the Ninth Circuit's decision. Plaintiff opposed staying the case or deferring the motion, and Defendant did not appear to have a preference. Accordingly, the Court will proceed with the motion, basing its decision on the law as it currently stands.

[2] Plaintiffs do not dispute Defendant's contention that a retail installment contract constitutes a "loan" for purposes of the National Bank Act.

5
Case No.: 10-CV-01916-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT

>   (2) A national bank may make non-real estate loans without regard to state law limitations concerning . . .
>
>>   (iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan . . .
>>
>>   (vi) Security property, including leaseholds . . .
>>
>>   (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents . . . .

12 C.F.R. § 7.4008(d). The regulation also includes a savings clause, which provides that state laws on certain subjects "are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers." 12 C.F.R. § 7.4008(e). The subjects listed in the saving clause are: contracts, torts, criminal law, rights to collect debts, acquisition and transfer of property, taxation, zoning, and "[a]ny other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section." *Id.* Paragraph (a) sets forth the powers of national banks to "make, sell, purchase, participate in, or otherwise deal in" non-real estate loans and interests in non-real estate loans, "subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any other applicable Federal law." 12 C.F.R. § 7.4008(a).

The Supreme Court has described the history of national bank legislation as "one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank of Marion County*, N.A. v. Nelson, 517 U.S. 25, 32, 116 S.Ct. 1103 (1996). In keeping with this history, cases defining the preemptive scope of statutes and regulations granting a power to national banks "take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id.* at 33. Thus, the Ninth Circuit has held that "the usual presumption against federal preemption of state law is inapplicable to federal banking regulation." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir.

6

Case No.: 10-CV-01916-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT

2005).  These principles must guide this Court in determining whether the OCC's preemption regulation encompasses Plaintiff's claims in this case.

Defendant argues that the ASFA post-repossession notice requirements are expressly preempted by § 7.4008(d) as state laws requiring "[d]isclosure . . . , including laws requiring specific statements, information, or other content to be included in . . . credit-related documents," 12 C.F.R. § 7.4008(d)(2)(viii); concerning security property, § 7.4008(d)(2)(vi); or regulating terms of credit, including the schedule for repayment of principal and interest . . . [and] the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan," § 7.4008(d)(2)(vi).  In a case involving very similar facts, the Southern District of California agreed with this theory, finding the notice requirements preempted by § 7.4008(d)(2)(viii) as provisions regulating disclosures to be included in credit-related documents.  *Aguayo v. U.S. Bank*, 658 F. Supp. 2d 1226, 1232-33 (S.D. Cal. 2009).  The *Aguayo* court reasoned that the post-repossession notice required by ASFA is a "credit-related document" because it is issued as part of the bank's continuing credit relationship with the debtor, and the purpose of the notice is to inform the debtor that his credit has been revoked and how it may be restored.  *Id.* at 1233 (citing *Crespo v. WFS Fin. Inc.*, 580 F. Supp. 2d 614, 623 (N.D. Ohio 2008)).  It also found that the ASFA notice requirements "are undoubtedly disclosure requirements." *Id.* at 1232.  Accordingly, the court concluded that the ASFA requirements constitute state law limitations relating to disclosures in credit-related documents and are expressly preempted by § 7.4008(d)(2)(viii).

Plaintiff contends that the reasoning in *Aguayo* is flawed and argues that the Rees-Levering post-repossession notice requirements are explicitly preserved from preemption by the savings clause in § 7.4008(e).  According to Plaintiff, ASFA's post-repossession notice requirements should be considered state laws relating to "[r]ights to collect debts" that are not preempted to the extent that they only incidentally affect the exercise of national banks' lending powers.  *See* 12 C.F.R. § 7.4008(e) (listing rights to collect debts as a subject of state law that is not inconsistent with national banks' lending powers and that applies to national banks to the extent it only incidentally affects those powers).  Plaintiff draws a line between the "credit-related documents"

7

described in § 7.4008(d)(2)(viii), which pertain to "mak[ing] non-real estate loans," § 7.4008(d)(2), and the ASFA notice requirements, which pertain to debt collection and do not come into play until *after* a loan has been made. In support of this distinction, Plaintiff points to Judge Whyte's decision in *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004). In *Alkan*, Judge Whyte held that Office of Thrift Supervision regulations very similar to the OCC regulation at issue here did not preempt the California Fair Debt Collection Practices Act ("CFDCPA"). *Id.* at 1064. Judge Whyte reasoned that because the CFDCPA does not come into play until after a loan is made and does not affect the manner in which a lender services or maintains a loan, the CFDCPA is not a lending regulation. *Id.* Judge Whyte therefore rejected Defendant's argument that debt collection is an essential part of the lending process and found that Plaintiff's claims under the CFDCPA were not preempted. *Id.*

This Court agrees with the holdings in both *Aguayo* and *Alkan*. Plaintiff is correct that lending is at the heart of banking regulation and the subject of the OCC's preemption regulation, while debt collection is a separate matter of state concern that has long been governed by state law. *See Atherton v. F.D.I.C.*, 519 U.S. 213, 222-23 (1997) (noting that banks are subject to numerous state laws, including laws governing the right to collect debts). The savings clause in § 7.4008(e) expressly identifies debt collection as a subject of state regulation that will frequently escape preemption by federal banking law. Accordingly, the Court agrees that the OCC regulation does not preempt a state law, like that considered in *Alkan*, which regulates the methods that may be used to collect a debt.

The Court is not persuaded, however, that the Rees-Levering Act is the type of law intended to be preserved by the savings clause. The California Fair Debt Collection Practices Act at issue in *Alkan* is wholly directed at preventing unfair and deceptive debt collection practices.[3] *See* Cal. Civ. Code § 1788.1. It prohibits the collection of debts by abusive practices such as the use of threats or force, § 1788.10; obscene language or harassing telephone calls, § 1788.11;

---

[3] Another example of a law that might fall within the scope of the saving clause is California's Collateral Recovery Act, Cal. Bus. & Profs. Code § 7500 et seq, which governs repossession. While certain of its provisions may have an incidental effect on banks, *see id.* § 7502.2, the law does not regulate lending.

8

Case No.: 10-CV-01916-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT

communication about the debt with third parties, § 1788.12; false representations, § 1788.13; and other unfair or deceptive methods. In contrast, the Rees-Levering Act creates a comprehensive statutory scheme for the regulation of automobile sales financing. Much like federal lending regulations, Rees-Levering imposes extensive disclosure requirements for conditional sale contracts, Cal. Civ. Code §§ 2982, 2982.2, sets forth rules governing the calculation of finance charges, § 2982, and even dictates the format and font size in which all conditional sales contracts must be made, § 2981.9. The Act also requires nine specific disclosures regarding redemption and reinstatement after default, § 2983.2, and provides relief to buyers for violations of the Act, §§ 2983, 2983.1. In other words, Rees-Levering regulates the entire lending relationship in automobile sales finance, from the initial extension of credit under an installment contract to its withdrawal and potential reinstatement after default. The particular provisions at issue in this case are a part of this regulatory scheme, and though they touch on debt collection practices, their primary purpose is to inform consumers of their right to restore their credit relationship with the lender and to inform them of their rights and obligations should their vehicle be sold. *See* Cal. Civ. Code § 2983.2.

Thus, although this Court agrees with the holding of *Alkan*, it is the holding of *Aguayo* that applies in this case. The National Bank Act "contemplates broad participation by the national banks in lending activities," including "not only creating loans, but also purchasing, participating in, and dealing loans." *Aguayo*, 658 F. Supp. 2d at 1234. Indeed, several of the lending activities specifically listed in the OCC's express preemption provision extend beyond the loan origination process to the bank's ongoing relationship with the debtor. *See* § 7.4008(d)(2)(iv) ("circumstances under which a loan may be called due"); § 7.4008(d)(2)(viii) ("billing statements"); § 7.4008(d)(2)(ix) ("[d]isbursements and repayment"). This suggests that national banks' lending powers, and the scope of OCC preemption, encompass the entire lender-debtor relationship, from the initial extension of credit to its repayment, withdrawal, or reinstatement. Here, the ASFA post-repossession notice requirements are part of the ongoing lending relationship between the buyer of the vehicle and the lender. The ASFA's post-repossession provisions do not regulate the methods a bank may use to repossess a vehicle or collect a deficiency after the vehicle is sold; rather, they

9

Case No.: 10-CV-01916-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT

1   ensure notice to the buyer of what steps she must take to restore her credit relationship and either

2   redeem her vehicle (thereby concluding her credit relationship) or reinstate her installment contract

3   (thereby continuing the credit relationship). As such, the notice required by the ASFA is a "credit

4   related document" as described in the OCC's express preemption clause. 12 C.F.R.

5   § 7.4008(d)(2)(viii). The ASFA clearly requires the holder of the contract to make nine specific

6   disclosures in that document. Cal. Civ. Code § 2983.2(a)(1)-(9). Accordingly, the ASFA post-

7   repossession notice provision is a state law concerning "[d]isclosure . . . , including laws requiring

8   specific statements, information, or other content to be included in . . . credit-related documents,"

9   and the Court must conclude that it is expressly preempted by the OCC regulation. 12 C.F.R.

10   § 7.4008(d)(2)(viii).

### 2. Voluntary assumption of ASFA requirements

Plaintiff argues that even if the ASFA notice requirements are preempted by the OCC regulation, preemption nonetheless does not apply in this case because Wells Fargo voluntarily agreed to comply with the Act when it assumed the installment contract from the car dealership. The Supreme Court has held that a preemption clause will not shelter a regulated entity from "suits alleging no violation of state-imposed obligations, but seeking recovery solely for the [entity's] alleged breach of its own, self-imposed undertakings." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). Plaintiff attempts to bring this case into the framework of *Wolens* by arguing that the ASFA notice requirements were incorporated into the installment contract and voluntarily assumed by Wells Fargo when it took over the contract from the dealership.

The installment contract at issue here makes no direct reference to the Rees-Levering Act. In a section entitled "Applicable Law," the contract states that "Federal law and California law apply to this contract." FAC Ex. A ¶ 6, ECF No. 11 at p. 19. In a section dealing with the consequences of default, the contract states that if the vehicle is repossessed, "we will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle." FAC Ex. A, ECF No. 11 at p. 20. Applying California principles of contract interpretation, Plaintiff argues that the contract terms must be given the meaning they would have had for the parties at the time of contracting, *Navarro v. Mukasey*, 518 F.3d 729, 734

10

Case No.: 10-CV-01916-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT

(9th Cir. 2008), and that California consumers would reasonably have expected the contract to be governed by California law. Accordingly, Plaintiff argues that the language "notices required by law" at the time of contracting must have meant compliance with the Rees-Levering Act, as the only potentially applicable California law. Thus, Plaintiff contends that by accepting assignment of the contract, Wells Fargo voluntarily assumed a promise to comply with the provisions of the Rees-Levering Act that were incorporated into the contract.

The Court is not persuaded that the references to state law and notice requirements in the installment contract constitute the kind of privately ordered, self-imposed undertakings that escape preemption under *Wolens*. In that case, the plaintiffs argued that American Airlines breached its contract with frequent flyer members by retroactively applying new restrictions on the use of mileage credits to credits plaintiffs had already accumulated. *Id.* at 225. In finding that plaintiffs' breach of contract claim was not preempted by federal law, the Supreme Court emphasized that the claim alleged "no violation of state-imposed obligations," but rather sought to enforce "privately ordered" obligations and business judgments that the airline made about its rates and services. *Id.* at 228-29. The premise of *Wolens* and similar cases is that preemption should not bar a plaintiff from enforcing the terms of a private contract, where those terms are separate from and do not require enforcement of preempted state-imposed obligations.[4] *See id.* at 228, 232-33; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525-26, 112 S.Ct. 2608 (1992) (permitting breach of express warranty claim because the warranty was imposed by the express, voluntary statements of the manufacturer, not by state law); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483-

---

[4] As Plaintiff notes, the Supreme Court of Maryland has held that a federal savings bank may contractually agree to comply with state law notice requirements, even though those requirements were otherwise preempted by Office of Thrift Savings regulations. *Wells v. Chevy Chase Bank, F.S.B.*, 377 Md. 197, 832 A.2d 812 (2003). In that case, however, the contract at issue was prepared by the bank and expressly stated that "Subtitle 9 ['Credit Grantor Revolving Credit Provisions'] of Title 12 ['Credit Regulations'] of the Commercial Law Article of the Maryland Annotated Code" governed the contract. *Id.* at 201, 231. The court found that the state law obligations of Subtitle 9 could be imposed on the bank "only because the agreement between the parties refer to it and do so in the context of the notice to be given in the event that the agreement is amended." *Id.* at 231. In the instant case, Defendant Midland Funding contends that the principles underlying the NBA do not permit a national bank to voluntarily oblige itself to comply with preempted state law. Def.'s Reply 5, ECF No. 20. However, because the contract at in this case does not contain an express agreement to comply with the Rees-Levering Act, the Court need not decide the issue here.

84, 38 Cal. Rptr. 3d 653 (Cal. Ct. App. 2005) (finding no preemption of UCL claim based on breach of express contract terms where only the state's general laws on contracts were implicated).

In this case, Plaintiff's claims are predicated not on privately ordered contract terms, but on violations of obligations imposed by the state of California in the Rees-Levering Act. Moreover, to the extent that a bank may contractually obligate itself to comply with preempted state laws – an issue this Court need not decide – the Court does not agree that the general references in the installment contract to California law and "notices required by law" are sufficient to bind Wells Fargo to specific statutory notice requirements that it is otherwise free to disregard. The *Wolens* Court stated that the "distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. In this case, to find Wells Fargo contractually obligated to comply with the ASFA notice requirements would enhance the private terms of the contract and subject the bank to state-imposed obligations that are federally preempted.

Under OCC regulations, Wells Fargo was entitled to "make non-real estate loans without regard to state law limitations" concerning disclosures and free of state laws that condition its ability to fully exercise its lending powers. 12 C.F.R. § 7.4008(d)(1)-(2). The OCC regulations preempt the post-repossession notice requirements of the Rees-Levering Act, and the language of the contract Wells Fargo assumed from the dealership does not change that. Because Wells Fargo was not required to comply with the Rees-Levering Act, any alleged non-compliance with the Act's notice requirements cannot serve as a bar to collection of a deficiency by Wells Fargo or its assignees. It follows that Plaintiff's claims against Defendant Midland Funding, which are premised on Well's Fargo's non-compliance, lack a cognizable legal theory. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). Accordingly, Plaintiff's claims under the FDCPA and the UCL must be dismissed. Because no facts alleged could cure the preemptive effect of the OCC regulations, the Court finds that amendment would be futile. The Court therefore GRANTS Defendant's motion to dismiss these claims with prejudice.

### B. Declaratory relief

In the third and last cause of action, Plaintiff seeks a declaration of the rights, remedies, and obligations of the parties. Plaintiff's claim for declaratory relief is based on a controversy arising out of Midland's practice of collecting debts that were not owed as a matter of law. FAC ¶ 44. As in Plaintiff's claims under the FDCPA and the UCL, these allegations are predicated on the claim that Wells Fargo was required to comply with the notice requirements of the Rees-Levering Act. Because the Court has determined that federal law preempts the Rees-Levering Act as applied to Wells Fargo, the Court finds that Plaintiff's claim for declaratory relief is not premised on an actual controversy as required by 28 U.S.C. § 2201. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's third cause of action with prejudice.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the FAC with prejudice. Because the Court finds that federal preemption bars Plaintiff's claims, the Court does not reach Defendant's arguments regarding standing and the sufficiency of Plaintiff's claims under Rule 9(b). Additionally, because the Court has dismissed the entire FAC, the Court DENIES as moot Defendant's motion to strike portions of the FAC. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 19, 2010

_____
LUCY H. KOH
United States District Judge